**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:20-CV-00126-HBB**

**JENNIE LLOYD**                                                                                      **PLAINTIFF**


**VS.**


**KILOLO KIJAKAZI, ACTING COMMISSIONER[1]**
**SOCIAL SECURITY ADMINISTRATION**                                        **DEFENDANT**


**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Jennie Lloyd ("Plaintiff") seeking judicial

review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both Plaintiff

(DN 16) and Defendant (DN 20) have filed a Fact and Law Summary.   For the reasons that follow,

the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the

Commissioner.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties have consented to the

undersigned United States Magistrate Judge conducting all further proceedings in this case,

including issuance of a memorandum opinion and entry of judgment, with direct review by the

Sixth Circuit Court of Appeals in the event an appeal is filed (DN 14).   By Order entered February

8, 2021 (DN 15), the parties were notified that oral arguments would not be held unless a written

request therefor was filed and granted.   No such request was filed.

---

1    Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.   Pursuant to Rule 25(d)
of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this
suit.

<u>FINDINGS OF FACT</u>

Prior to the present application, Plaintiff filed an application for Supplemental Security Income Benefits on February 19, 2013, which alleged a disability onset date of June 1, 2012 (Tr. 15, 63-74).   On March 18, 2015, an Administrative Law Judge issued an unfavorable decision (<u>Id.</u>).   Subsequently, Plaintiff filed the present application.

Plaintiff filed an application for Supplemental Security Income Benefits on August 25, 2017 (Tr. 15, 188-94).   Plaintiff alleges to have become disabled on March 19, 2015, as a result of degenerative disc disease, cage in back (back fusion), narrowing of nerve from spine (lower back), migraines, depression, and anxiety (Tr. 15, 84-85, 102).   This claim was initially denied on December 11, 2017, and the claim was again denied upon reconsideration on May 9, 2018 (Tr. 15, 98-99,[2] 117-18[3]).   Thereafter, Plaintiff filed a written request for a hearing (Tr. 15, 145-47).

Administrative Law Judge Jennifer B. Thomas ("ALJ") conducted a video hearing from Nashville, Tennessee on February 26, 2019 (Tr. 15-16, 34-36).   Virtually present at the hearing from Madisonville, Kentucky was Plaintiff, who was represented by her attorney Sara J. Martin Diaz (<u>Id.</u>).   During the hearing, Lynn Jones testified as a vocational expert (Tr. 16, 35-36, 52-57).

At the forefront of her determination, the ALJ noted Plaintiff's prior application and determined whether res judicata was applicable (Tr. 15).   As Plaintiff had filed her current application for Supplemental Security Income Benefits two years after the last determination,

---

2   While the ALJ listed the denial date of the initial consideration as December 13, 2017 (Tr. 15), the disability determination and transmittal documentation notes that the determination date was December 11, 2017 (Tr. 83, 99).   As such, the undersigned will use the December 11, 2017 date.

3   Like the initial determination, the ALJ remarked that the reconsideration denial date was May 15, 2018 (Tr. 15). However, the signature for the disability adjudicator/examiner listed the date as May 9, 2018 (Tr. 118), which corresponds to the disability determination and transmittal documentation listing May 9, 2018 (Tr. 100). Therefore, the undersigned will use the May 9, 2018 date.

including the present application having an onset date after the prior determination, the ALJ found that "the record contains new and material evidence that provides a basis for a different finding of [Plaintiff]'s residual functional capacity" (Id.).

At the first step of the ALJ's determination, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 25, 2017, the application date (Tr. 18).   At the second step, the ALJ determined Plaintiff has the following severe impairments: degenerative disc disease of the back, depressive disorder, anxiety disorder, post-traumatic stress disorder (PTSD), and dysfunction of major joints – left knee and left hip disorders (Id.).   The ALJ also found Plaintiff's left rotator cuff injury, acute kidney injury, and hypokalemia to be non-severe (Id.).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Id.).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 416.967(a) except for the following limitations: Plaintiff requires the option to sit and stand at will while remaining on task for the work performed at work station; she can occasionally climb ramps and stairs, never climb ladders, ropers, or scaffolds; she can occasionally stoop, kneel, crouch, and crawl; she can have occasional exposure to extreme cold and vibration; she can have no exposure to moving mechanical parts or unprotected heights; she can understand, remember, and carry out simple, routine tasks; she can sustain concentration, persistence, and pace for 2 hours at a time and an 8-hour workday; she can have frequent interaction with co-workers and supervisors and occasional interaction with the public; and she cannot work at a production rate (Tr. 21).   The ALJ found Plaintiff has no past relevant work (Tr. 25).

3

After this finding, the ALJ moved to the fifth step, where the ALJ also considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert, to find that Plaintiff is able to perform other jobs that exist in the national economy (Tr. 26). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, since February 24, 2017, the date the application was filed (Tr. 27).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 169-71). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the

4

Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality

of the Commissioner's decision).   Thus, the Court will be reviewing the decision of the ALJ, not

the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered

the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d

146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and

Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II

Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term

"disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which can
> be expected to result in death or which has lasted or can be expected
> to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a),

416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923

(6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential

evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general,"

20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1)   Is the claimant engaged in substantial gainful activity?

2)   Does the claimant have a medically determinable
     impairment or combination of impairments that satisfies the
     duration requirement and significantly limits his or her
     ability to do basic work activities?

3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)      Does the claimant have the residual functional capacity to return to his or her past relevant work?

5)      Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Challenge to Finding No. 9: Vocational Expert Testimony

1.   Arguments of the Parties

Plaintiff's first argument asserts that the vocational expert testified as to certain jobs Plaintiff could perform which have a combined total of 76,000 jobs in the national economy, but the vocational expert's testimony was predicated upon the use of the Dictionary of Occupational Titles ("DOT") (DN 16-1 PageID 1216).   Plaintiff takes issue with the use of the DOT, as "all three job descriptions were last updated in 1977," and as the information is over forty years old, "the descriptions of these jobs [are] unreliable" (Id.).   Instead, Plaintiff argues that the DOT is obsolete, and the proper database of more accurate information is the Occupational Information Network ("O*NET") (Id. at PageID 1217).   Moreover, Plaintiff claims that while the vocational expert testified about 76,000 jobs nationally, there are only a combined 1,520 jobs *regionally* (Id.). Plaintiff notes that "ONET is not recognized by [the] SSA" but "the guidelines do no[t] limit the sources an ALJ can use when there is clear indication that the evidence may not be reliable" (Id. at PageID 1218).   After the ALJ held the hearing, Plaintiff filed a post-hearing brief which addressed these issues, but the ALJ overruled the objections (Id. at PageID 1219).

6

In contrast, Defendant claims that the ALJ followed the proper standard by considering the number of jobs in the *national* economy (DN 20 PageID 1248-49).   Even then, Defendant cites to Martin v. Comm'r of Soc. Sec., 170 Fed. Appx. 369, 375 (6th Cir. 2006) and Harmon v. Apfel, 168 F.3d 289, 292 (6th Cir. 1999), to assert that "jobs existing in the hundreds have been found significant in number" (Id. at PageID 1249-50).   "In any event, Plaintiff never objected to the [vocational expert]'s testimony during the hearing.   At no point did the ALJ prevent cross-examination of the [vocational expert].   .  .  .   Yet, at no point did Plaintiff inquire whether the three occupations the [vocational expert] identified were 'outdated,' or whether the DOT descriptions were inaccurate compared to how the occupations are currently performed.   At no point did Plaintiff ask the [vocational expert] whether O*NET was reliable, ask the [vocational expert] to compare the DOT to O*NET in terms of usefulness, or inquire whether the O*NET contained different information than the DOT for the three occupations" (Id. at PageID 1250) (citations omitted).   If the undersigned does not find that Plaintiff waived this argument by failing to cross-examine the vocational expert on these issues, Defendant asserts that "the Sixth Circuit has also signaled that the failure to cross-examine the [vocational expert] on later-contested issues severely weakens an argument" (Id. at PageID 1251) (citing Harris v. Comm'r of Soc. Sec., 598 Fed. Appx. 355, 361 n.9 (6th Cir. 2015)).

2.  Discussion

The burden of proof does not shift to the Commissioner to establish plaintiff's ability to work until the fifth step of the evaluation.   Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).   At the fifth step, it is the Commissioner's burden to show that there exists a significant number of jobs in the

local, regional and national economies that the plaintiff can perform, given her residual functional capacity.  *See* Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).  The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy which Plaintiff can perform considering the combination of her limitations.  *See* Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Davis v. Sec'y of Health & Human Servs., 915 F.2d 186, 189 (6th Cir. 1990); Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).  In making a determination at step five of the sequential evaluation process, the ALJ must consider a claimant's age, education, past relevant work experience, and RFC.   20 C.F.R. §416.920(f).

A vocational expert's testimony can constitute substantial evidence to support the Commissioner's finding that a plaintiff is capable of performing a significant number of jobs existing in the local, regional, and national economies, Bradford v. Sec'y, Dep't. of Health & Human Servs., 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), so long as a vocational expert's testimony is based on a hypothetical question which accurately portrays the plaintiff's physical and mental impairments.  Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).  If the ALJ presents evidence of job availability, the plaintiff must rebut that she can perform the identified job.  Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991) (per curiam). The hypothetical question is not erroneous where at least one doctor substantiates the information contained therein.  Hardaway v. Sec'y of Health & Human Servs., 823 F.2d 922, 927-28 (6th Cir. 1987) (per curiam).   Moreover, there is no requirement that the ALJ's hypothetical question to the vocational expert reflect the plaintiff's unsubstantiated complaints.  Id.

Substantial evidence supports the factual underpinnings of the hypothetical questions posed to the vocational expert.  As a result of the hypothetical questions, the vocational expert proffered three occupations: lens inserter, DOT 713.687-026, which has 25,000 positions in the national economy; addressing clerk, DOT 209.587-010, which has 36,000 positions in the national economy; and stuffer, DOT 731.685-014, which has 15,000 positions in the national economy (Tr. 53-54).  The vocational expert identified a significant number of jobs that plaintiff could perform, which is the legal standard that the Commissioner must meet.  *See e.g.*, McCormick v. Sec'y of Health & Human Servs., 861 F.2d 998, 1000, 1002 (6th Cir. 1988) (4,000 to 5,000 jobs in Michigan); Hall v. Bowen, 837 F.2d 272, 274 (6th Cir. 1988) (1,350 to 1,800 jobs in the nine county area of Dayton, Ohio); *accord* Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1479-80 (9th Cir. 1989) (citing Hall) (1,255 jobs in Los Angeles/Orange County); Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988) (citing Hall) (500 jobs in St. Louis area); Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (174 jobs locally, 1,600 jobs in Georgia, and 80,000 nationally).  Because the vocational expert was able to identify a significant number of jobs which plaintiff could perform, the Commissioner met his burden.  *See* Blacha v. Sec'y of Health & Human Servs., 823 F.2d 922, 928 (6th Cir. 1987).

Moreover, the Sixth Circuit, albeit in an unpublished opinion, previously cautioned that "*common sense dictates*" when job descriptions in the DOT "appear obsolete, a more recent source of information should be consulted."  Cunningham v. Astrue, 360 Fed. Appx 606, 615 (6th Cir. 2010) (emphasis added).  Several district courts in the Sixth Circuit followed Cunningham and remanded matters to the Commissioner when the vocational expert's reliance on potentially obsolete job descriptions from the DOT raised sufficient doubt whether substantial evidence

9

supported the ALJ's determination at the fifth step.   *See e.g.* <u>Wright v. Berryhill</u>, No. 4:18-CV-00021, 2019 WL 498855, at *9 (W.D. Ky. Feb. 8, 2019); <u>Westmoreland v. Berryhill</u>, No. 3:17-cv-00096, 2018 WL 1522118, at *4 (S.D. Ohio Mar. 28, 2018); <u>Rollston v. Comm'r of Soc. Sec.</u>, No. 1:16-CV-168, 2016 WL 6436676, at *4 (W.D. Mich. Nov. 1, 2016).   Other district courts within the Sixth Circuit criticized <u>Cunningham's</u> reasoning and declined to follow its holding.   *See e.g.* <u>Kidd v. Berryhill</u>, No. 5:17-CV-420-REW, 2018 WL 3040894, at *7-10 (E.D. Ky. June 19, 2018); <u>Montano v. Comm'r of Soc. Sec.</u>, No. 1:13-cv-70, 2014 WL 585363, at *15 (S.D. Ohio Feb. 14, 2014); <u>Belew v. Astrue</u>, No. 2:11-107-DCR, 2012 WL 3027114, at *9-10 (E.D. Ky. July 24, 2012).

In a recently issued unpublished order, the Sixth Circuit attempted to resolve the apparent confusion among some of the district courts.   <u>O'Neal v. Comm'r of Soc. Sec.</u>, 799 F. App'x 313, 316-18 (6th Cir. 2020).   Because the regulations continue to recognize the DOT as a source of reliable information and the claimant did not to cross-examine the vocational expert about the DOT job descriptions when he had the opportunity, the Sixth Circuit held the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that the claimant was able to perform work that existed in significant numbers in the national economy.   <u>Id.</u>   The Sixth Circuit even went on to note that the applicable regulations "do[] not list O*NET as a reliable source.   And, in fact, in 2010, the SSA determined that O*NET in its current form was not suitable for disability claims adjudication."   <u>Id.</u> at 317.

Applying the holding in <u>O'Neal</u> to the circumstances before the Court, the vocational expert discussed three occupations which a hypothetical person with Plaintiff's limitations could perform (Tr. 53-54).   Plaintiff had the opportunity to, and did in-fact, cross-examine the vocational expert (Tr. 56-57).   But Plaintiff failed to cross-examine the vocational expert about

the obsolescence of the DOT's descriptions for these three jobs (Id.).   Considering the holding in

O'Neal, the vocational expert's testimony constitutes substantial evidence to support ALJ's

finding that a substantial number of jobs in the national economy are present that Plaintiff can

perform.

In conclusion, the ALJ's use of the vocational expert's testimony, relying on the DOT, was

supported by substantial evidence.   Therefore, Plaintiff's argument under this claim fails.

Challenge to Finding No. 4: Treating Providers

1.   Arguments of the Parties

Plaintiff's next contention asserts the "ALJ failed to give 'controlling weight' to the

opinion of [Plaintiff]'s treating providers" (DN 16-1 PageID 1219).   "Both physicians submitted

Functional Capacity Questionnaires that greatly limited [Plaintiff]'s ability to hold full time

employment of any sort" (Id.).   Plaintiff argues that "[t]he opinion of a treating physician is

entitled to more weight than the opinion of a non-treating physician" (Id.) (citing 20 C.F.R.

§ 404.1527; Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529-30 (6th Cir. 1996)).   Plaintiff

also noted that "[t]he ALJ acknowledged that the 'light work' RFC that the State agency medical

consultants adopted was unsupported by the evidence available at the time of the decision" (Id.).

"[T]he ALJ should have afforded great weight to the opinions of Dr. McCay and Dr. Farmer[, and

t]he ALJ failed to articulate sufficient reason for finding these opinions 'unpersuasive'" (Id. at

PageID 1222-23).   Thus, the ALJ's disregarding of Dr. Farmer's and Dr. McCay's opinions was

"clear error" and "not supported by substantial evidence" (Id. at PageID 1219, 1224).

Defendant disputes Plaintiff's argument by asserting that the ALJ properly applied "a new

set of regulations for evaluating medical evidence that significantly alters how the agency

11

considers medical opinions," due to Plaintiff filing her application after March 27, 2017 (DN 20 PageID 1241).   "The new regulations eliminate any semblance of a hierarchy of medical opinions and underscore that the agency does not defer to any medical opinions, even those from treating sources" (Id. at PageID 1241-42) (citing 20 C.F.R. § 416.920c(a)).   Defendant claims "the ALJ complied with the revised regulations and sufficiently explained why he discounted Drs. Farmer and McCay's opinions about Plaintiff's physical limitations" (Id. at PageID 1243).   "The two medical sources merely checked boxes relating to general categories of functioning that required accommodation, such as balancing, sitting/standing/shifting at will, interacting socially, or needing frequent unscheduled breaks" (Id.) (citing Tr. 571, 572).   Ultimately, "Plaintiff's argument amounts to asking the Court to reweigh the evidence in her favor" (Id. at PageID 1245).

2. Discussion

At the forefront, the undersigned notes that Plaintiff's contentions utilize outdated regulations which are not binding to the present claim, and Plaintiff's cited regulations do not even pertain to Supplemental Security Income Benefits.   Plaintiff cites 20 C.F.R. § 404.1527, while § 404.1 states, "[t]he regulations in this part 404 . . . relate to the provisions of title II of the Social Security Act[,]" which governs Disability Insurance Benefits.   Instead, the part of the regulations which govern Supplemental Security Income Benefits is noted in 20 C.F.R. § 416.101: "The regulations in this part 416 . . . relate to the provision of title XVI of the Social Security Act. . ." As such, the proper regulations are from part 416 of the Code of Federal Regulations and Title XVI of the Social Security Act.   20 C.F.R. § 416.927 is entitled, "Evaluating opinion evidence for claims filed before March 27, 2017[,]" and the section contains the following note: "For claims filed . . . before March 27, 2017, the rules in this section apply.   For claims filed on or after

March 27, 2017, the rules in § 416.920c apply." Id. § 416.927.  Looking at § 416.920c, it is entitled, "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017[,]" and the section contains a similar notation to § 416.927 regarding the applicable regulations.  Id. § 416.920c.  As previously noted, Plaintiff filed her current claim on August 25, 2017 (Tr. 15, 188-94), which demonstrates that the applicable regulation is § 416.920c.

Additionally, Plaintiff also, in part, utilizes the wrong standard of review.  At the introduction of this claim, Plaintiff argues that the ALJ's disregard of the medical opinions was "clear error," while the conclusion of the claim states that the decision was not supported by substantial evidence.  The "clear error" standard applies when a district judge reviews a magistrate judge's report and recommendation to which no timely objection has been filed.  *See* FED. R. CIV. P. 72 Advisory Committee Note Subdivision (b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); Mitchum v. Saul, No. 2:19-CV-02533-JPM-dkv, 2020 WL 1493482, at *1 (W.D. Tenn. March 27, 2020); Samona v. Comm'r of Soc. Sec., No. 15-CV-11713, 2018 WL 2159893, at *1 (E.D. Mich. May 10, 2018).  The "clear error" standard also applies when a party moves a district court to alter or amend its judgment under FED. R. CIV. P. 59(e). *See* Moore v Berryhill, No. 4:17-CV-00091-HBB, 2018 WL 2197974, at *1 (W.D. Ky. May 14, 2018).  Neither situation exists here.  Instead, Plaintiff is utilizing the "clear error" standard in her challenge of the final decision of the Commissioner.  But the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied.  *See* 42 U.S.C.

13

§ 405(g); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)).   Thus, the Court declines Plaintiff's invitation to apply the "clear error" standard.

Turning back to the relevant regulations for Plaintiff's application, the new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)" in the record, even if it comes from a treating medical source.  20 C.F.R. § 416.920c(a).[4]  Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation.   Id. §§ 416.920c(a) and (b).   The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors.   Id. § 416.920c(c)(1)-(5).[5]   Of these five factors, the two most important are supportability and consistency.   Id. §§ 416.920c(a) and (b)(2).   Further, the regulation requires Administrative Law Judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion.   Id. § 416.920c(b)(2).   Notably, under the regulations, Administrative Law Judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion.   Id. § 416.920c(b)(2).   An Administrative Law Judge will articulate how they considered the other factors in paragraphs (c)(3) through (c)(5) of the regulation when they find

---

4    The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 416.927.

5    In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.   20 C.F.R. § 416.920c(c)(3)(i)-(v).

that two or more medical opinions about the same issue are both equally well supported and consistent with the record but are not exactly the same.   Id. § 416.920c(b)(3).

The ALJ's determination discussed the opinions of Drs. Farmer and McCay, specifically their opinions that Plaintiff is unable to work and requires several accommodations (Tr. 25). However, the ALJ found Dr. Farmer's and Dr. McCay's limitations "mostly vague, as they do not define sufficient . . . specific functional limitations" (Id.).   Moreover, the ALJ noted, "their opinions that [Plaintiff] is unable to work is reserved solely to the Commissioner of Social Security" (Id.).   Finally, the ALJ remarked that the limitations opined were "inconsistent with [Plaintiff]'s unremarkable examination findings" (Id.).

Turning to the documentation from Drs. Farmer and McCay, both providers completed a singular form which contains blank spaces for their diagnosis, prognosis, and recent treatment and dates (Tr. 571-72).   There were also two sections with check boxes, one for RFC and the other for accommodations (Id.).   Dr. Farmer listed a diagnosis of degenerative disc disease of the lumbar spine, described the prognosis as poor, and indicated that Plaintiff was seen approximately every three months (Tr. 571).   As for the check boxes, Dr. Farmer selected the box that stated Plaintiff is "[u]nable to work at this time" and selected the following accommodation boxes: difficulty in social interactions, inability to maintain concentration and/or focus, trouble following directions, balance issues, and frequent unscheduled breaks (Id.).   However, Dr. Farmer marked that the limitations would not impair Plaintiff's daily living activities (Id.).   Dr. McCay listed a diagnosis of lower back pain complicated at the L3-L5 after surgery, with a prognosis of "Consistently unable to maintain one position [without] pain for the past 12 years.   [Physical therapist] and chiropractor give relief but nothing long lasting" (Tr. 572).   The recent treatment and dates only

included the date that Dr. McCay completed the functional capacity questionnaire (Id.).   Like Dr. Farmer, Dr. McCay marked that Plaintiff is unable to work at this time, and Plaintiff required two accommodations: frequent unscheduled breaks and ability to sit/stand/shift at will (Id.).

Looking at the ALJ's analysis preceding Dr. Farmer's and Dr. McCay's opinions, the ALJ noted a history of back pain with lumbar fusion and advanced degenerative disc disease, but "other than pain with range of motion and some tenderness with reduced left thigh sensation, lumbar examinations were unremarkable.   For example, [Plaintiff] has generally had 5/5 strength with normal range of motion" (Tr. 22) (citing Tr. 773, 856, 887, 894, 900, 913, 919, 1074, 1080, 1085-86, 1088, 1112, 1116, 1120).   Moreover, Plaintiff's "surgeon recommended [she] quit smoking as a pre-requisite to performing additional lumbar spine surgery, but the record notes [Plaintiff] has reported continuing to smoke two packs of cigarettes a day (Id.) (citing Tr. 774, 1088).

While Plaintiff cites five cumulative pages (Tr. 836-37, 853, 855, 883) of records in which Plaintiff complains of back pain, as well as six cumulative pages (Tr. 908-13) of chiropractic appointments, the ALJ cited medical documentation to show that Plaintiff's lumbar examinations were unremarkable (Tr. 22).   Furthermore, the ALJ noted proactive steps Plaintiff may have taken to further her treatment for back pain, but Plaintiff failed to take those steps (Id.).   Finally, the ALJ's determination utilized the current version of Title XVI and part 416 regulations in the adjudication of this claim to comport with the correct legal standards (Tr. 21-25).

Therefore, the ALJ's determination as to the consideration of the opinions of Drs. Farmer and McCay utilizes the correct legal standards and regulations and is supported by substantial evidence.   As such, Plaintiff's argument is awarded no relief.

16

Challenge to Finding No. 4: Consultative Examiner

1.   Arguments of the Parties

Similar to Plaintiff's last argument, Plaintiff asserts, "The ALJ failed to give proper weight to the opinion of the state's own Consultative Examiner" (DN 16-1 PageID 1223).   After reviewing the opinion of the State agency psychological consultant, Dr. Kathy Seigler, the ALJ found the limitations suggested to be "not persuasive," and Plaintiff asserts that this determination "was in error and not supported by substantial evidence" (Id.).   Plaintiff cites to diagnoses of post-traumatic stress disorder, depression, and anxiety, in addition to a history mental health treatment to argue that "her daily activities and ability to work have been greatly restricted" (Id. at PageID 1223-24).   "Combined with the severe physical pain that she suffers from, her mental health limitations are completely work preclusive" (Id. at PageID 1224).

Defendant, in tandem to the prior response, asserts that the ALJ considered the opinion but found it unpersuasive as the "opinion of marked limitations was 'inconsistent' with the examiner's own unremarkable mental status examination" (DN 20 PageID 1246) (citing Tr. 24).   Dr. Seigler's conclusions were also not consistent with the other treatment records (Id.) (citing Tr. 23, 580, 631, 634, 650, 682, 694, 697, 700, 729, 971, 1093).   Moreover, "[b]eyond the objective medical findings, the ALJ noted that Plaintiff had undergone conservative treatment (medication) that significantly improved her mental health symptoms" (Id. at PageID 1247) (citing Tr. 23, 695).

2.   Discussion

As noted in the prior argument, the new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)" in the record, even if it comes from a treating medical

17

source.  20 C.F.R. § 416.920c(a).  Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors.  Id. §§ 416.920c(a)-(c).

On December 4, 2017, Dr. Seigler conducted a consultative examination of Plaintiff (Tr. 563-68).  Dr. Seigler noted "no history of inpatient treatment, suicide attempts, psychotic episodes or mania/hypomania[,]" but Plaintiff's "[f]amily history is significant for 'bipolar'" (Tr. 564).  Plaintiff had started counseling three months prior to the consultative examination and reported psychotropic medication in the past but not at the time of the examination (Tr. 564-65).  Additionally, Plaintiff reported her mood as "sad" or "down," worsening symptoms and hallucinations, and disturbing dreams and intrusive memories from post-traumatic stress disorder (Tr. 565).  However, Dr. Seigler noted that Plaintiff is able to do the dishes, fold laundry, and cook, all without assistance, in addition to Plaintiff shopping for household goods once or twice a month (Tr. 566).  During the mental status exam, Plaintiff was able to spell "world" backwards, was able to recite a 6-digit series of numbers forwards and a 4-digit series backwards, was able to name the current and past president, was able to recall 3 out of 3 unrelated words after a 15 minute delay, and Plaintiff was cooperative during the examination (Id.).  Furthermore, Plaintiff's judgment and reality testing were good, she possessed adequate insight into the nature of her difficulties, and her decision-making skills appeared normal (Tr. 567).  During the RFC determination, the ALJ found Dr. Seigler's opinions to be unpersuasive as the marked limitations were "inconsistent with [Plaintiff]'s unremarkable mental-status examinations at her [consultative examination] and throughout her treatment records" (Tr. 24).

18

Looking to the record, there are numerous notations where Plaintiff was alert and oriented to person, place, and time, in addition to having normal mood, affect, behavior, and judgment. *See e.g.* (Tr. 330-31, 334-35, 340-41, 345-46, 350, 353, 469, 576, 580, 640).   Moreover, the record also contains several documents which report Plaintiff's symptoms remaining stable through the use of medication (Tr. 523, 596, 598).   Additionally, during her visits to Mountain Comprehensive Care Center, the documentation shows a pattern of Plaintiff's appearance and affect were routinely appropriate, her demeanor was appropriate, she maintained normal eye contact, her speech was clear, her thoughts were logical, and her behavior was cooperative (Tr. 631-714)

The Department of Disability Determination also evaluated Plaintiff and found:

> She was able to recall 3 of 3 unrelated words after a 5 minute delay. Her attention to task varied and concentration appeared scattered. She was alert and oriented to person, place, and time.   She had no difficulty recalling information regarding personal past events, as well [as] basic historical information such as recent presidents.

> [Plaintiff]'s eye contact with the examiner was normal.   Her facial expressions appeared responsive.   Her attitude towards the examination was cooperative.   [Plaintiff]'s affect was appropriate and mood appeared anxious, which was congruent to reports, as she stated she felt 'wired.'

> [Plaintiff]'s speech flow was normal.   Her though content appeared appropriate to mood and circumstances.   [Plaintiff] reports a history of auditory or visual hallucinations, but denied current symptoms of psychosis.   The organization of her thought processes appeared logical during the interview, though there were times she appeared tangential.   In addition, she appeared paranoid at times, asking on a couple of occasions 'if everyone is going to see this' report.

19

(Tr. 459).   During the examination, Plaintiff was able to successfully spell "world" backwards, had a five-digit span forwards, a four-digit span backwards, was able to count to thirty by threes, correctly listed the number of weeks in a year, named three large cities, noted the direction of the sunset, and knew the capital of Kentucky (Tr. 459-60).

Therefore, there is substantial evidence in the record to support the ALJ's determination that Dr. Seigler's opinion of marked limitations was inconsistent with her own examination and the record as a whole, and as such, Dr. Seigler's opinion was unpersuasive.   As such, Plaintiff is awarded no relief under this claim.

### Challenge to Finding No. 4: Sedentary RFC

1.   Arguments of the Parties

Plaintiff's final argument asserts "[t]here was not substantial evidence to support the ALJ's finding that [Plaintiff]'s condition would have allowed her to perform sedentary work" (DN 16-1 PageID 1224).   Moreover, "[t]he ALJ failed to recognize the limiting effects of [Plaintiff]'s severe conditions" (Id.).   "Based on the objective evidence, Dr. Farmer and Dr. McCay's limitations discussed above, and the testimony presented at Ms. Lloyd's hearing, she should have limited to less than sedentary work" (Id.) (underlining omitted).   The failure to find the "less than sedentary work" RFC was "clear error" (Id. at PageID 1225).   Plaintiff's "severe findings indicate that [her spondylolisthesis L3-4] would greatly interfere with [Plaintiff]'s daily activities" (Id. at PageID 1226).

Additionally, while acknowledging the ALJ's modification to the sedentary RFC, allowing Plaintiff the option to sit and stand at will while remaining on task for the work performed at the work station, Plaintiff asserts that "this limitation is clearly insufficient to overcome the

debilitating nature of her condition" (Id.).  Plaintiff argues that the ALJ should have included a limitation to allow Plaintiff to "take unscheduled and unpredictable breaks throughout the day" (Id. at PageID 1227).

Defendant does not respond to this contention directly, but instead, Defendant's argument on this point is interconnected to the previous two responses.  Citing to precedent from this district, Defendant noted an emphasis on "no fixed standard [being enumerated] by which the ALJ must evaluate the RFC based only on medical opinion evidence" (DN 20 PageID 1247) (citing Burris v. Berryhill, No. 5:16-CV-00092-LLK, 2017 U.S. Dist. LEXIS 56469, at * (Ky. W.D. Apr. 13, 2017)).  Considering the prior responses, in tandem with this, Defendant argues that the ALJ's determination was supported by substantial evidence (Id. at PageID 1247-48).

2.  Discussion

The RFC finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.  20 C.F.R. §§ 416.945(a), 416.946(c).  The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record.  20 C.F.R. §§ 416.920(a)(3), 416.945(a)(3), 416.946(c) 404.1529, 404.1545(a)(3), 404.1546(c).  Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily evaluate the persuasiveness of the medical source statements in the record and assess the claimant's subjective allegations.  20 C.F.R. §§ 416.920c, 416.929(a).

As the Court has previously noted, the "clear error" standard only applies in two situations: when a district judge reviews a magistrate judge's report and recommendation to which no timely objection has been filed, or when a party moves a district court to alter or amend its judgment

under FED. R. CIV. P. 59(e).   Neither situation exists here.   The Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied.   *See* 42 U.S.C. § 405(g); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)).   Thus, the Court again declines Plaintiff's invitation to apply the "clear error" standard.

Turning to Plaintiff's arguments, the undersigned has already discussed the opinions of Drs. Farmer and McCay, specifically how the ALJ's determination to find their opinions "unpersuasive" was supported by substantial evidence (*supra* pp. 15-16).

Furthermore, the ALJ's determination extensively discussed Plaintiff's mental and physical impairments, as well as the evidence in the record (Tr. 21-25).   The ALJ considered Plaintiff's subjective complaints, such as "difficulty lifting, squatting, bending, standing, walking, sitting, kneeling, climbing stairs, remembering, concentrating, completing tasks, and getting along with others" or when "her left knee gives out and she is unable to sit for a prolonged period of time" (Tr. 22).   However, the ALJ found that despite these complaints, Plaintiff's lumbar examinations were "unremarkable" and generally had a 5/5 strength with normal range of motion, the medical imaging "showed only mild degenerative changes of the right knee while medical imaging of [Plaintiff]'s left knee was normal[,]" her "knee examinations were consistently unremarkable[,]"Plaintiff does not require a cane or walker to ambulate, "her gait has generally been normal[,]" and "there is limited discussion of [Plaintiff]'s reported loss of bowel and bladder function" (Tr. 22-23) (record citations omitted).   After discussing the physical impairments and limitations, the ALJ turned to, and discussed, the mental impairments (Tr. 23-24).

Finally, the ALJ utilizes the Sixth Circuit's holding in Drummond v. Comm'r of Soc. Sec., 126 F.3d 837 (6th Cir. 1997),[6] to adopt a prior finding of light work with postural and environmental limitations, but also concludes "new and material evidence available at the time of [the ALJ's] decision, including more recent medical imaging and examination findings, supports limiting [Plaintiff] to sedentary work" (Tr. 25).

Plaintiff presents documentation that has already been considered by the ALJ. While Plaintiff may disagree with the RFC finding, the evidence in the record, as outlined by the ALJ's determination, is extensively outlined and articulated, specifically as to finding medical opinions "unpersuasive." As such, the RFC is supported by substantial evidence, and no relief is awarded.

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. (Id.). After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law. Therefore, Plaintiff is not entitled to relief with regard to her challenge.

---

6    In substance, Drummond holds that when a claimant who has been denied benefits files a second or successive application for benefits, absent new and additional evidence indicating an improvement in the claimant's condition, the Administrative Law Judge who addresses this subsequent application is bound by the Commissioner's prior residual functional capacity findings. Drummond v. Comm'r of Soc. Sec., 126 F.3d 837, 841-42 (6th Cir. 1997).

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

September 10, 2021

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:         Counsel of Record

24